324-0634. The people of the state of Illinois, Appalachia, v. Alexa M. Warner, Appellant. Mr. Aronson, you may proceed. Thank you, Justice Holdridge, and good morning, and may it please the Court. Alexis Warner was convicted of leaving the scene of an accident based on an in-court I.D. by a complete stranger 18 months after their very short encounter, who said he, quote, didn't really pay attention to her face, end quote, and another stranger who couldn't even remember general details about the other driver, like race, gender, or age. These I.D.s were plainly unreliable. Without them, the state's case turned on equally unreliable hearsay about who owned the other car, but not even who was driving it the night of the crash. Viewing the weak eyewitness evidence in the totality of the circumstances, no rational trier of fact could have found that the I.D.s or car registration proved guilt beyond a reasonable doubt here. Courts weigh eyewitness I.D.s with the factors from Neal v. Biggers in the totality of the circumstances. Here, the totality shows that all five factors work against the state's eyewitness I.D.s here. The Nunezes I.D.ed Ms. Warner, who was a complete stranger to them before the brief encounter here, for the first time in court nearly 18 months, that's 506 days, after a cross-racial interaction that only lasted a very short time. What evidence, what evidence in the record is there of Ms. Warner's race? Yes, Justice Brennan, Gumersindo Nunez testified that he knew that Ms. Warner was not the same race as him, and he, Gumersindo Nunez, is Hispanic. Ms. Warner is Black. What's the evidence in the record that Ms. Warner is Black? Yes, Justice Brennan, so at trial, Gumersindo testified that he knew that she was a different skin color than him, and he testified that he is Hispanic. Right, well, there's other skin colors besides Hispanic and Black. Yes, that is true, Justice Brennan. In the PSI, we know that Ms. Warner is Black. PSI is after the trial. Yes, Justice Brennan, that is true. I'm only raising the PSI to note that there is a difference. So the trial evidence showed that there was a difference in the skin color between Gumersindo and Ms. Warner. That's why I raised the cross-racial nature of the ID. And my recollection is that Gumersindo said they were both very dark. That's what he said to the officer. That's what he testified that he said to the officer, but he also testified that he knew that she was a different skin color than him. Of course, Hispanics could have different skin colors and both still be Hispanics. Yes, Justice Brennan, that is true. It just doesn't seem like a very compelling portion of the Biggers test. Let me ask another question. Sure. Biggers is a police lineup case. Isn't it a police misconduct case in terms of how they orchestrated an identification? Yes. So Biggers itself was a case of police misconduct and police lineups. But Biggers, as it's been incorporated into Illinois law since SLIM, has been cited not for police misconduct exclusively, but for the factors that contribute to the unreliability of eyewitness IDs generally. The IPI for eyewitness identifications, which, of course, was not at play here because there was no jury, but is instructive, incorporates all five of the factors from Biggers for eyewitness identification. And it says nothing about police misconduct. So Illinois law incorporates the principles underlying Biggers in cases regarding eyewitness identification. Continue. So the Nunez has ID'd Ms. Warner here, who was a complete stranger to them before the brief encounter, for the first time in court 18 months after the crash, which lasted only a very short time. And Ms. Warner was wearing a medical mask in court. She was also wearing a head covering at the time of the crash, which Gumer Sindow and Sarai saw from several feet away. Let me ask again about evidence. What evidence in the record is there about the face mask that Ms. Warner was wearing? Yes. So the state raised the fact that the face mask was obscuring Ms. Warner's identity in the state's rebuttal closing argument. OK, great. And is our closing arguments evidence? Closing arguments are not evidence. Did the defendant, did the defense attorney ever ask the court to take judicial notice of anything as it relates to a face mask? The defense did not ask the court to take judicial notice. So we have no evidence at all as to whether she was wearing a face mask. If she was wearing a face mask, how much of the face was covered? We have nothing. Well, I wouldn't describe it as nothing. I would describe it. I would say that we have non-evidence. Well, the state's burden at trial is to prove identification. If there if the state later argued that a face mask does not obscure identity, then it would have been their responsibility, their burden at trial to ask Ms. Warner to lower her mask just briefly for the sake of eyewitness identification. Courts are very familiar with that procedure, especially since COVID. We are, but somebody generally has to ask for it to happen during the evidentiary portion of the trial. That is true, which is the state's burden. Is there anything in the record to describe the face mask? Is it the non-effective surgical mask or is it an N95? Because they all have different levels of facial coverage. It was described in the record as a medical mask. And to Justice Brennan's point, that was in the argument portion. But that's the evidence that we have of what type of mask it was, a medical mask. So people wearing medical masks, your argument is, are unidentifiable? That that's not our argument, Justice Holdrich. Our argument is that if you if you take the totality of the circumstances here, which the state does not want to do, but rather wants to atomize the approach, then between the face, the fact that there was a face mask, which the state said obscured Ms. Warner's identity, and the other bigger factors, the fact that Gumersindo testified that he was not paying attention to her face, the fact that Sarai Nunez couldn't identify basic information like the other drivers, race, age, or any other general description. All of that in the totality suggests the unreliability of the eyewitness identifications here. You say you say she could not identify. My recollection of the testimony is that she did not give the officer those details. That's different than she could not provide the details. That is true that that she was specifically asked if she gave the driver those details. That was the only question she was asked as it relates to that. That is true, but the evidence in the record also suggests that she was so uncertain of the events from that day that she had to be prodded to respond at all to what she remembered. And what she said was that she did not provide any information on the other drivers, race, age, facial features, head covering. Gumersindo, on the other hand, specifically testified that he didn't really pay attention to her face. So between Gumersindo's explicit testimony that he didn't pay attention to her face and the absence of testimony from Sarai about what the other driver looked like, the totality of the circumstances here show shows that the Nunezes did not get a sufficient look at the other driver, certainly not to prove guilt beyond a reasonable doubt or to bespeak the reliability of their in-court I.D. 18 months after that very brief encounter. Is a witness required to tell the police officer what they saw? I mean, particularly when they're undergoing medical treatment, as she was. No, that is that is true, Justice Bertani, that that a witness is not required to ask to to tell those details to police. But the very fact that she was not paying attention to the other driver because she was seeking medical attention further supports Ms. Warner's argument that her I.D. was unreliable. That's the intention came after the police got there. Not why not during the very brief time that the defendant is alleged to have been at the scene. That that is true, that the police got that the police arrived later after the other driver had had left. But the third, I believe it's the third biggest factor speaks to the degree of attention. And here the degree of attention. Goomer Sindel already testified that he didn't pay attention to her face. And the evidence in the record shows that Sarai Nunez was was was focused on the fact that she was injured in the crash. But before that, she was got out of the car with the with her phone and took a picture of the car where presumably in the front. There was somebody sitting at the driving wheel at the driving. Well, there is there is evidence that she that she got out and took a picture of the other car's license plate. That's not that's not disputed. She did not testify that she that she got any look at the other driver's facial features or any of the other features that even Goomer Sindel testified to not paying attention to. So the only evidence in the record from the trial is it is that Sarai was out of the car taking a picture of the other car, not that she was paying attention to the other driver, which which the evidence suggests she was not. So moving back to the bigger factors, Goomer Sindel barely had any chance to see the offender. He got out of the car to take a picture in the middle of a highway at night with headlights shining in his eyes. He said one sentence from about seven feet away and the other driver took off. In his own words, the whole thing lasted, quote, a very short time. Sarai had even less opportunity. Like I said before, she did not even try to speak to the other driver, which explains why she didn't tell police some of the details to Justice Bertani's question. The witness's opportunity to view the offender is among the most important factors. Here, there was barely any opportunity to view the offender. Degree of attention, as I mentioned before, also undermines the IDs. Goomer Sindel again testified in his words that he didn't really pay attention to the other driver's face. The descriptions were also vague. Neither told police anything about the other driver's head covering, hairstyle or color, facial features or size. Sarai Nunez didn't even know the other driver's race or rather did not give any information about the other driver's race, age or gender. Like I said before, that's because she was not focused on the other driver. She was focused on getting checked by paramedics because she was injured in the crash. There was no prior description of the offender and there was substantial time between the crash and the identification. The Nunez's first ID'd Ms. Warner in court 18 months, 506 days after the very brief crash while Ms. Warner was wearing that medical mask, which the state at trial said obscured her identity. Even Officer Eber, who spoke with the other car's owner a few weeks after the crash, could not identify Ms. Warner in court as that person he spoke to. And as mentioned before, we have some evidence of the cross-racial nature of the IDs. Between the problems with the cross-racial identification and the vague, doubtful and uncertain description of the other driver, no rational trier of fact would have found their identification reliable and certainly not sufficient to sustain a conviction. With that unreliable eyewitness identification evidence, the state only had Officer Eber's testimony that a leads report showed that the other car was registered to Ms. Warner, but he couldn't even remember if he personally read the report. The state at trial didn't seek to admit the report itself, and they had to refresh Officer Eber's memory with the police report. So we're talking about layers of unreliable information. This weak evidence of registration did not reliably prove ownership and told the court nothing about who was actually driving the car. Officer Eber even testified that he never saw Ms. Warner driving the other car. In fact, when he spoke to the owner of the car, she was a passenger while the car was being driven by someone else. Then again, he could not identify Ms. Warner in court as the passenger he spoke to. Viewing the unreliable eyewitness IDs in the totality of the circumstances as People vs. Johnson, which the state cites for additional authority, asks us to do, no rational trier of fact could have found this evidence sufficient to prove leaving the scene beyond a reasonable doubt. Again, the state does not want this court to view those factors in the totality. They want an atomized approach. They want to isolate the evidence for each factor here. But again, that's not what the Illinois Supreme Court said that this court should do in Johnson. The Illinois Supreme Court, like Ms. Warner, said that this court should apply the bigger factors in the totality of the circumstances and ask whether any rational trier of fact could find these IDs, prove guilt beyond a reasonable doubt. Here, they couldn't. And if there are no further questions, I would like to reserve my time for rebuttal. You'll have time in reply, counsel. Any questions from the court? Not for me. Oh, thank you. Thank you. Counsel for Apley may respond. May it please the court. Laura Bailon on behalf of the People. Defendant was proven guilty beyond a reasonable doubt of leaving the scene of an accident involving property damage. The contested issue here is whether defendant was the driver of the vehicle who fled after striking the victim's vehicle. The Collins standard applies. So the issue is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution with all reasonable inferences from the evidence allowed in favor of the state. Where two eyewitnesses identified defendant as the driver and she was also the owner of the vehicle that hit the victim's car. The evidence was sufficient to prove she was the driver. Ms. Bailon, let me ask you a question. I can't come up with any rationale that this hearsay evidence related to ownership of the vehicle is admissible. Just, I mean, I can come up with all kinds of things the state could have done to get certified records to prove it, but apparently they forgot to do that. So that objection should have been sustained completely. You don't disagree with that, do you? My response to that is that, so even if the court should not have admitted the hearsay testimony. You can admit, you can say that the court erred when it admitted. It's okay because it's what happened. The court admitted the hearsay testimony and the court did state that he considered the hearsay testimony. However, the Leeds report itself would have been admissible as a business record had defendants specifically said you need the Leeds report. It could have been admitted. It's not the defendant's obligation to do that. I mean, the state has, the defendant objected on hearsay grounds and that objection should have been sustained absent appropriate foundation. And the state didn't offer any foundation. So what happened was the judge, he didn't sustain it. So if the judge had sustained the objection and said no foundation, then the report could have admitted. Obviously it wasn't. But, you know, even if it wasn't properly admitted, so let's say it wasn't properly admitted. Why don't we just say it's gone? And where's your case rest now? Well, I wouldn't, I wouldn't say it's gone because the case law holds that in considering the sufficiency of the evidence the court considers all of the evidence. I want to just say something about that. Justice Holdren, am I interrupting? No. I want to say something about that because that sufficiency of the evidence case law is in the context of whether double jeopardy would preclude retrial. This is not that we're not asking that question. We're asking the question whether it's really. If evidence is improperly admitted, which I think. Assume for the sake of analysis that it was improperly admitted the hearsay evidence, then the question is whether the remaining whether that's harmless error, whether the remaining evidence is enough. Whether it would have been a guilty but for the incorrectly admitted hearsay evidence. So I guess that's the that's at least for me for a minute or two of your argument. I'd like you to focus on that aspect of the evidence. Sure, of course. Yes. Well, we don't need that. We don't need the ownership of the vehicle to prove defendant guilty beyond a reasonable doubt. The evidence is sufficient, even without it. And that's because even one eyewitness testimony, one eyewitness can be sufficient to sustain a conviction. And here there's two in a bench trial for the trial judge to determine the credibility of the witnesses and the sufficiency of their opportunity to observe the conditions. The case holds that conditions need not be perfect. The observation need not be prolonged. And the trial judge was aware of all of the circumstances of the identification. They were argued at trial by defense counsel. The trial judge rejected those arguments, finding that the identifications were sufficiently reliable. Viewing the evidence in the light most favorable to the people, the trial judge could find that the Nunez's were sufficiently able to observe the driver who hit them and identify her in court. The photos show the road was lined with overhead light poles. Mr. Nunez testified he made contact with the driver, told her to wait because he was going to call the police. And he testified he saw her face from six or seven feet away. Mrs. Nunez also testified that she got out of the car and she saw the dark grayish Nissan Altima with only defendant in it. And while she did not speak with her, she testified that she did see her. Concerning the timing of the identification, it was 16 and a half months after the crash. And similar or longer time frames of two years or more have still been held by the courts to support positive identifications. Regarding the race issue, Mr. Nunez testified that he told the officer her skin was like his because he considered himself dark as well. The trial judge saw both their skin tones. There's no pictures of either one of them in the record. The trial judge could determine what that testimony meant in context and whether Mr. Nunez is just referring to them both not being white. There's also the argument that Mr. Nunez wasn't paying attention. People submit that his answer must be viewed in the context of the five questions that preceded it. He was asked five questions in a row about what he told the officer and what he thought was important to tell the officer. He said he thought that showing a picture of the license plate was more important than trying to describe the facial features. And in the context of those five questions about what he thought was important to tell the officer, the trial judge, as a trier of fact, could interpret his testimony as meaning that he didn't pay attention to describing the face to the officer. Not that he wasn't paying attention when looking at the driver because the whole point in getting out of his vehicle was to make observations about what had just happened. Additionally, a witness is not expected to distinguish individual or separate features of a suspect in making an identification. On the prior descriptions front, Mr. Nunez did tell the officer that the driver was a lady in her 20s who was wearing a head covering and he told the officer she was black. So he did give us a description. As far as Ms. Nunez not giving a description, she said she was only asked what she told the officer. She was trying to remember what she told the officer. She never stated that she didn't know the officer's race or she didn't know the officer's gender. Instead, she said she didn't think she gave a description to the officer because the paramedics came to check on her. She didn't think she didn't state that she didn't know the gender of the driver. She's I think you were the driver. Oh, I apologize. Your Honor. Concerning the mask issue, the record doesn't reflect how and when defendant was wearing the mask while the witness testified. The trial judge had the chance to observe the circumstances of the in-court identifications. Having made those observations, the trial judge allowed the record to reflect the in-court identifications with no objection made by the defense. Even if she was wearing a mask, courts have upheld identifications where victims could only see parts of the suspect's face. The trial judge could find that witnesses could identify her even if parts of her face were partially obscured. And the people never introduced any evidence to state that she couldn't be identified. They said whether or not she was wearing a mask, they knew who she was. And additionally, defendant never presented an expert witness. He's pushing this cross-racial identification point. But under Johnson, a defendant cannot rely on scientific evidence on a matter of uncommon knowledge to challenge the prosecution's case unless they present that evidence for the testimony of an expert witness at trial. Here, based on the eyewitnesses' identifications, which was for the trial judge to consider whether to find them credible, the evidence was sufficient to prove defendant guilty beyond a reasonable doubt. So this court should affirm defendant's conviction and sentence. Any questions from the court? No, thank you. Thank you. Counsel, you may reply. Thank you, Your Honor. I'd like to start by quoting directly from the record of what exactly Gumersindo Nunez testified to. When asked if he thought it was important to tell the officer what the other person's face looked like so he, the officer, can find her, Gumersindo Nunez testified, I knew it was important. Well, actually, I didn't think it was important. So that's why I only took notice of the fact that she was wearing a head covering but didn't really pay attention to her face. Again, the state is asking this court to take the most atomized approach to this evidence when the record itself suggests that Gumersindo volunteered the fact that he didn't really pay attention to her face. So his identification in court nearly 18 months later after the crash was not reliable. The state says, and it's true, that reasonable inferences should be made in favor of the state, but it's an unreasonable inference to infer that a person who said explicitly at trial that he didn't really pay attention to her face and was a complete stranger to this person was able to identify her more than 500 days later. That is an unreasonable inference. And then with respect to Sarai's testimony, again, the state is encouraging an atomized approach, saying that although she was saying that she was responding to the question of what she told police. As your honors noted in my opening argument, Sarai Nunez was focused on medical attention or focused on taking pictures of the other car. She was not focused, nor did she testify that she was focused on the other driver, which is why she did not share details about the other driver's face, age, or gender. She did not know them. So any inferences that this court should make must be reasonable. The state did not meet its burden at trial, and no rational trier of fact could have found that in the totality of the circumstances, the eyewitness identifications reliably proved that the Nunez's could identify Ms. Warner in court a complete stranger when they weren't really paying attention. And then just briefly, as Justice Brennan noted in opposing counsel's argument, this evidence of car registration was inadmissible, and it was error to consider it. The court relied on it to prove who was driving the car. That is not how the trial court should have used that evidence if it considered it at all. That evidence should not have been considered, and we point to the recent case of Broxton, where the appellate court noted that in the absence of a reliable identification about who was driving the car, the court cannot use improperly admitted registration information to sustain the state's burden. That is improper. So what we know here, and the state again encourages this court to apply Johnson, Ms. Warner does not disagree. In the totality of the circumstances, the eyewitness identifications only showed that two witnesses were not really paying attention to the other driver's face or very important identifying information. The case law supports that in the totality, in applying the Biggers factors, that those eyewitness identifications were unreliable. Johnson asks, could any rational trier of fact found those eyewitness identifications reliable in the totality of the circumstances? Here, they could not. Again, Gumer Sindhu Nunez testified he didn't really pay attention to her face. With that, unless this court has any further questions, we ask this court to reverse Ms. Warner's conviction for leaving the scene of an accident outright. Thank you. Questions from the court? So is there any evidence of record that the driver or the defendant had any unique feature about their face? Let's talk like a tattoo or a significant scar. There is no evidence in the record to my knowledge that there was any uniquely identifying information other than the head covering. Which they recognized. They noted that there was a head covering, although Gumer Sindhu did not testify to any identifying remarks about a head covering. So we don't know if it was a hat, a scarf, a hood. We don't know anything about it. And I take it that you submit that the human mind is incapable of identifying someone by looking at them, even if they didn't if they didn't concentrate on the face or pay attention to the face. No, Justice Bertani. Ms. Warner is not arguing that that could never be the case. But it is the case here where the Nunezes and Ms. Warner were complete strangers until they saw each other in court. Given that they were complete strangers, a person could not identify a complete stranger whose identity was obscured by that mask in court 500 days later. After that very short encounter when one of the witnesses, who again was a stranger, didn't really pay attention to her face. Thank you. Very good. Thank you, counsel, both for your arguments on this matter this morning. It will be taken under advisement. A written disposition shall issue.